```
         UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF ALABAMA
              NORTHEASTERN DIVISION
```



FILED
97 JUL 16 PM 2:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

JOHNNY HILL, and the class )
he seeks to represent,     )
                           )
     Plaintiff,            )
                           )
vs.                        )   CIVIL ACTION NO. CV 96-S-1026-NE
                           )
DUNLOP TIRE CORPORATION,   )
                           )
     Defendant.            )
_____)

ENTERED
JUL 16 1997

## MEMORANDUM OPINION

This action is before the court on plaintiff's motion for class certification pursuant to Rules 23(a) and 23(b)(2), *Fed.R.Civ.P.* Upon consideration of the motion, pleadings, and evidentiary submissions,[1] this court determines the motion is due to be denied.

### I. STANDING

Plaintiff alleges that he and the class he seeks to represent were subjected to unlawful discrimination based on race (African-American), in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.* Plaintiff alleges "race discrimination in wages/compensation, promotions, job/work assignments, and other adverse terms, conditions and privileges of employment." (Plaintiff's Complaint, ¶ 1.) Plaintiff seeks to represent a class consisting of:

---

[1] It is not necessary to conduct an evidentiary hearing before deciding a motion for class certification. *Grayson v. K Mart Corporation*, 79 F.3d 1086, 1099 (11th Cir.), *cert. denied*, __ U.S. __, 117 S.Ct. 447, 136 L.Ed.2d 332 (1996).

> All African-American employees and candidates or potential candidates who applied or, would have applied in the absence of the discriminatory practices challenged herein, for salaried positions with the defendant at its facility in Huntsville, Alabama from October 8, 1991 to the present.

(Plaintiff's Motion for Class Certification, at 1.) The Eleventh Circuit holds that:

> any analysis of class certification must begin with the issue of standing and the procedural requirements of Title VII. Thus, the threshold question is whether the named plaintiffs have individual standing, in the constitutional sense, to raise certain issues. Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.

*Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987)(citations omitted), *cert. denied*, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1988).

Plaintiff has standing to sue, because he alleges his employer discriminated against *him* on the basis of race, and, he has met Title VII's filing requirements. *See Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527, 531 (11th Cir. 1992), *cert. denied*, 508 U.S. 961, 1135 S.Ct. 2932, 124 L.Ed.2d 682 (1993). In defining the scope of the putative class, however, plaintiff paints with too broad a brush. He seeks to include all African-American employees, candidates, and potential candidates who either applied, or would have applied, for salaried positions from October 8, 1991 to the present. (Plaintiff's Motion for Class Certification, at 1.)

Plaintiff pegs October 8, 19_91_ as the opening date for the putative class, asserting that he may rely on the EEOC charge of

2

Kimberly Yarbrough, another Dunlop employee. Ms. Yarbrough filed her EEOC charge against defendant on October 8, 1993, however, and plaintiff does not explain his rationale for extending the scope of the class two years prior to the filing of Yarbrough's EEOC charge, as opposed to the required 180 days. Yet, the Eleventh Circuit holds "[t]he opening date for membership in a class for a Title VII claim should be set by reference to the earliest charge filed <u>by a named plaintiff</u>." *Payne v. Travenol Laboratories, Inc.*, 673 F.2d 798, 813 (5th Cir.)(emphasis supplied)(citations omitted), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 605 (1982). Yarbrough is not a named plaintiff. Even so, plaintiff cites *Larkin v. Pullman-Standard Division, Pullman, Inc.*, 854 F.2d 1549 (11th Cir. 1988), *vacated on other grounds, sub nom, Swift v. Pullman-Standard*, 493 U.S. 929, 110 S.Ct. 316, 107 L.Ed.2d 307 (1989), for the proposition that an unnamed plaintiff's charge can establish the temporal scope of a class action. In *Larkin*, the court held "under the circumstances of th[at] case ... [i]t is apparent that Pullman waived any objection it might have had to such a date." *Pullman*, 854 F.2d at 1562-63. This case is clearly distinguishable, because defendant has not waived its objection to the temporal scope of plaintiff's proposed class.

The temporal scope of a Title VII class is governed by 42 U.S.C. § 2000e-5(e), which provides:

> A charge under this section shall be filed within one hundred and eighty days after the alleged employment practice occurred...

3

Plaintiff may not represent any person whose claims would have been time barred at the time he filed his charge with the EEOC. *See Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 (D.C. Cir. 1976), *cert. denied*, 421 U.S. 1011, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). Plaintiff filed his EEOC charge on September 5, 1995. Thus, all claims based on adverse employment actions that occurred more than 180 days prior to that date (i.e., before March 8, 1995) are time barred. The temporal scope of plaintiff's Title VII claims must be adjusted accordingly.

The temporal scope of plaintiff's proposed class for plaintiff's § 1981 claim also must be restricted. The class can include only those persons who could present valid claims at the time plaintiff filed this action. The statute of limitations for a § 1981 claim is determined by applying the state statute of limitations for personal injury claims. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-62, 107 S.Ct. 2617, 2620-21 (1987). In Alabama, personal injury claims must be brought within two years after the right of action accrues. *Alabama Code* § 6-2-38(1). This action was commenced on April 22, 1996. Thus, the temporal scope of class claims under § 1981 is limited to those African-American employees, candidates, and potential candidates who applied, or would have applied, for salaried positions with defendant from April 22, 1994 to the present.

4

## II. DEFENDANT'S EMPLOYMENT STRUCTURE

Defendant's Huntsville facility operates under the following organizational structure:[2]

### DUNLOP TIRE CORPORATION
### Huntsville Organizational Structure



Hourly-wage employees are members of the relevant collective bargaining unit. The position of "section manager" constitutes the entry level salaried position at the Huntsville facility. Plaintiff seeks to represent all African-American employees in the Huntsville facility.

## III. RULE 23 REQUIREMENTS

A class action may be certified only if the court is satisfied that the requisite class qualifications of Rule 23(a) and either Rule 23(b)(1) or (2) or (3), Fed.R.Civ.P., have been met. *See General Telephone Company of the Southeast v. Falcon*, 457 U.S. 147,

---

[2] The organizational chart depicts only the production side of the plant. Other departments include: Human Resources; Manufacturing Planning; Technical Services; PRC Design and Support; Accounting/Payroll; and Warehouse.

5

161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d. 740 (1982). Plaintiff asserts that only Rule 23(b)(2) applies. Rule 23 provides, in relevant part:

> **(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> **(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> ...
>
> > (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

### A. Rule 23(a) Requirements

The Supreme Court holds that "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161, 102 S.Ct. at 2372. The commonality, typicality, and adequacy of representation requirements of Rule 23(a) involve an analysis of the "nexus"[3] between the named plaintiff and the alleged class to ensure that the named plaintiff "possesses the same interest and suffer[s] the same injury as class members." *East Texas Motor Freight System,*

---

[3] The term "nexus" first was used in a Title VII class action by the former Fifth Circuit. *Huff v. N.D. Cass. Company*, 485 F.2d 710, 714 (5th Cir. 1973).

6

*Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977)(internal quotations omitted).

### 1. Commonality and Typicality

The Supreme Court notes that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 158 n.13, 102 S.Ct. at 2371 n.13. Therefore, those requirements are considered simultaneously. Together, they

> serve as guideposts for determining whether under the particular circumstances maintenance of the class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

*Falcon*, 457 U.S. at 158 n.13, 102 S.Ct. at 2371 n.13. Plaintiff is unable to establish the commonality and typicality requirements between his claims and those of applicants for employment and bargaining unit employees.

### (a) Applicants for Employment

In *Falcon*, the Supreme Court rejected the "across the board" theory that all suits alleging discrimination on the basis of membership in a protected class are by definition class actions. *Id.*, 457 U.S. at 154, 102 S.Ct. at 2368. The court acknowledged that, loosely speaking, "racial discrimination is by definition class discrimination," but went on to explain that

> [c]onceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of

7

persons who have suffered the same injury as that individual, such that the individual's claim and the class claims share common questions of law or fact and that the individual's claim will be typical of the class claims.

*Id.*, 457 U.S. at 157, 102 S.Ct. at 2370. Yet, *Falcon* did not completely foreclose the possibility of certification of a class that includes both employees and applicants for employment. In the "now-famous footnote 15,"[4] the Court said:

[s]ignificant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes.

*Id.*, 457 U.S. at 159 n.15, 102 S.Ct. at 2371 n.15.

Plaintiff asserts the following challenges to defendant's selection procedures in his affidavit:

(a) the refusal to post or announce vacancies or to permit applications or bids for employment opportunities; (b) the use of a highly subjective system which encourages preselection of white employees by predominantly white managerial staff; and (c) the failure of defendant to follow its Affirmative Action plan.

(Plaintiff's Affidavit, at 7.) Plaintiff submits only his own affidavit in support of those three allegations.

Although the Supreme Court has not delineated what quantum or character of proof constitutes "[s]ignificant proof that [an employer] operated under a general policy of discrimination," *Falcon*, 457 U.S. at 159 n.15, 102 S.Ct. at 2371 n.15, the evidence must be sufficient to overcome the rule that "[i]ncumbent employees

---

[4] B. Lindemann & P. Grossman, *Employment Discrimination Law* 1584 (3d ed. 1996).

8

generally cannot represent a class containing unsuccessful applicants." *Washington v. Brown & Williamson Tobacco Corporation*, 959 F.2d 1566, 1570 (11th Cir. 1992); *see also Griffin v. Dugger*, 823 F.2d 1476, 1483-84 (11th Cir.), *cert. denied*, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1987); *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1364-65 (11th Cir. 1984).

In that regard, plaintiff's affidavit does nothing to compare defendant's process for promoting incumbent employees with its process for hiring applicants from outside the company. Indeed, plaintiff's affidavit does little more than state his assertion that "[t]he company also recruited applicants from outside to fill salaried positions." (Plaintiff's Affidavit, at 6.) Further, this court agrees with defendant that "the issues surrounding a posting policy inherently involve <u>current employees</u>, not applicants for employment." (Defendant's Memorandum, at 18 (emphasis in original).)

For those reasons, this court concludes plaintiff's unsupported allegations of an "informal, secretive and subjective decision process" (Plaintiff's Affidavit, at 6) do not constitute "significant proof" of a general policy by defendant to discriminate, both in its hiring and promotional decisions. Thus, plaintiff cannot establish the commonality and typicality requirements of Rule 23(a) in relation to claims by prospective class members who were applicants for employment with defendant, and those persons accordingly are to be excluded from the potential class.

9

### (b) Bargaining Unit Employees

Plaintiff also seeks to include members of the bargaining unit in the class. Such hourly-wage employees can be promoted to salaried positions, pursuant to sections 9.02-9.04 of the relevant collective bargaining agreement. (Affidavit of Tim Hartman, ¶ 3.) Plaintiff, however, is not a member of the collective bargaining unit; his employment is not governed by the terms of the collective bargaining agreement; his promotions are not determined in the same manner as those of union employees; and, as a supervisor, plaintiff performs work different in nature from that of hourly-wage union employees. For those reasons, plaintiff cannot show a sufficient "nexus" between his claims and those of union employees. *See Wells v. Ramsy Scarlett and Company, Inc.*, 506 F.2d 436, 437 (5th Cir. 1975)("the nexus between plaintiff and the class was insufficient" where plaintiff, who "was a salaried employee, employed on a monthly basis, who supervised longshoreman," sought to represent longshoremen, who were "under collective bargaining agreements");[5] *Moses v. Avco Corp.*, 97 F.R.D. 20, 24 (D. Conn. 1982)("[i]nherent problems exist with combining union and non-union employees within one class"); *Robins v. O'Brien Corporation*, 14 Fair Empl. Prac. Cas. 934, 935-36 (N.D. Cal. 1977)(lack of typicality between named plaintiff and putative class, because class was covered by collective bargaining agreements and named plaintiff never worked under any of the union contracts and because union employees did

---

[5] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

work different from that performed by plaintiff); *Parker v. Kroger,* 14 Fair Empl. Prac. Cas. 75, 81-82 (N.D. Ga. 1976)("[p]laintiff's claims are not likely ... to be representative of the claims of managerial and supervisory employees who are not associated with or represented by this or any other union"). Accordingly, members of the collective bargaining unit are to be excluded from the potential class.

### 2. Adequacy of Representation

The requirement of fair and adequate representation encompasses both class representatives and class counsel. *North American Acceptance Corporation v. Arnall, Golden & Gregory,* 593 F.2d 642, 644 n.4 (5th Cir.), *cert. denied,* 444 U.S. 956, 100 S.Ct. 436, 622 L.Ed.2d 328 (1979). The inquiry[6] "involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and of whether plaintiffs have interests antagonistic to those of the rest of the class." *Griffin v. Carlin,* 755 F.2d 1516, 1532 (11th Cir. 1985). Defendant has not challenged the qualifications of plaintiff's counsel. Instead, defendant asserts that plaintiff's interests, as a supervisor, are antagonistic to several prospective members of the class. In that regard, the District of Columbia Circuit has noted that:

> [s]upervisory employees are often inappropriate representatives of nonsupervisory employees because the structure of the workplace tends to cultivate distinctly

---

[6]"Just what measure of representation is adequate is a question of fact that depends on each peculiar set of circumstances." *Guerine v. J & W Investment, Inc.,* 544 F.2d 863, 864 (5th Cir. 1977)(citations omitted).

11

> different interests between the two groups. Although each group shares the interest in freedom from discrimination, potential conflicts may and do arise within a class including both.

*Wagner v. Taylor*, 836 F.2d 578, 595 (D.C. Cir. 1987); *see also Gilchrist v. Bolger*, 89 F.R.D. 402, 408 (S.D. Ga. 1984), *aff'd in relevant part*, 733 F.2d 1551, 1554-56 (11th Cir. 1984)(named plaintiffs, nonsupervisory personnel, had interests antagonistic to those of supervisory personnel in class).

In fact, plaintiff's interests <u>are</u> antagonistic to those managers working under his direct supervision in Business Center 2. Plaintiff, as immediate supervisor of several African-American managers, was required to complete performance appraisals of those employees. Performance appraisals strongly affect the employee's ability to receive promotions and pay increases. On the one hand, plaintiff would want to argue that the decision to deny promotions to those individuals was based on their race. Yet, on the other hand, he would be called as a witness for defendant to explain that his evaluations of their performance were based on other, legitimate considerations. Thus, plaintiff would be placed in the position of having to both challenge and defend the same employment decisions related to his immediate subordinates. Such a conflict cannot be resolved. Accordingly, plaintiff's African-American subordinates in Business Center 2 are to be excluded from the class.[7]

---

[7] The four African-Americans excluded from the class because they report directly to plaintiff in Business Center 2 are: Ronald L. Eason; John R. Humphrey; DeWayne McDonald; and Milton B. Rice.

12

### 3. Numerosity

This court thus has determined that plaintiff defined his class too broadly, and that he does not meet Rule 23(a) requirements for representing: applicants for employment; bargaining unit employees; and, African-American managers working directly under his supervision. "[I]f the plaintiff's definition of the class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of Rule 23." Wright, Miller, & Kane, Federal Practice & Procedure: Civil 2d § 1759, pp. 111-12. Therefore, this court redefines plaintiff's description of the class as follows:

> All African-American supervisory, technical, or professional employees (except for those directly supervised by plaintiff and bargaining unit members) who applied, or would have applied in the absence of the discriminatory practices challenged herein, for promotions to salaried positions with the defendant at its facility in Huntsville, Alabama from April 22, 1994 to the present.

There are 10 African-Americans in the Business Centers, not including plaintiff himself, that fit within this definition of the potential class.[8] (Affidavit of Traci L. Wiggins, Exhibits A and B.) The potential class also would include nine African-Americans

---

[8] The six African-American employees in Business Center One are: Section Managers Woodrow Allen, Napoleon C. Askew, Perry M. Ellison, and Cornada E. Simmons; Business Center Maintenance Manager James E. Pendleton; and Business Center Specialist Bibb Collier, Jr. The four African-American employees in Business Center Three are Section Managers Reginald T. Brooks, Robert C. Martin, Derwin C. Watkins, and Warrie Williams. The four African-Americans in Business Center 2 are excluded from the class. *See* note 7 *supra*.

13

from several other departments at defendant's facility,[9] and four individuals no longer employed by defendant.[10]

**POTENTIAL CLASS MEMBERS**

| Business Center One | 6 |
|---|---|
| Business Center Three | 4 |
| Departmental Employees | 9 |
| Former Employees | 4 |
| **Total Potential Class Size** | **23** |

Clearly, a class comprised of 23 members is not so numerous that joinder of all members is impracticable. See *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986)("while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty is adequate, with numbers between varying according to other factors")(internal quotations omitted); *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980), *cert. denied*,

---

[9]Those potential class members, by Department, are: <u>Human Resources</u>: Ernest L. Collier (Training Specialist), and Cynthia G. Ector (Industrial Engineer); <u>Manufacturing and Planning</u>: Walter J. Dixie (Master Planner Supervisor) and Peggy L. Steger (Buyer-Expeditor); <u>Technical Services</u>: James E. Gray (Tire Construction Engineer); <u>PRC Design & Development</u>: Steven L. Drake (Development Engineer); <u>Accounting/Payroll</u>: Pamela Collins (Accountant), and Janice Herod-Wilson (Payroll Department Supervisor); and <u>Warehouse</u>: Luke Carthen (Section Manager).

Kimberly Clay Yarbrough (Tire Fabric Engineer) also is an African-American member of the Technical Services Department. She must be excluded from the class, however, because of her involvement in prior litigation with defendant in which she settled her claims. (Declaration of Victor Maya, Attachment E: stipulation of dismissal between Yarbrough and Dunlop Tire Corporation in Civil Action No. 95-N-0925).

[10]Thomas Douglas (Business Center Manager) was discharged June 21, 1995. Paul Hill Jr. (Section Manager) quit April 25, 1995. Orange J. Holloway (Section Manager) quit May 28, 1995. Charley Humphrey, III (Production Center Specialist) quit May 3, 1995.

14

449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981)(class of 31 not so numerous that joinder impracticable). Accordingly, plaintiff has failed to meet the numerosity requirement of Rule 23(a).

### B. Rule 23(b)(2) Requirements

It is unnecessary to render findings of fact regarding Rule 23(b) requirements for class certification, because plaintiff failed to establish the prerequisites under 23(a). *See Hall v. National Recovery Systems, Inc.*, 1996 WL 467512, *5 (M.D. Fla. August 9, 1996)("[b]ecause plaintiff has failed to certify a class under Rule 23(a), it is unnecessary for the Court to address the requirements of Fed.R.Civ.P. 23(b)"); *Williams v. Glickman*, 1997 WL 198110, at (D.D.C. April 15, 1997)("[t]he Court will only address the requirements of Rule 23(a), as the plaintiffs' failure to meet these requirements makes it unnecessary to analyze Rule 23(b)").

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion for class certification is due to be denied. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 16th day of July, 1997.

_____
United States District Judge